UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON ARMITAGE, ) | Civil No. 09cv463-L(POR) |
| ) | |
| Petitioner, ) | **ORDER DENYING HABEAS** |
| ) | **CORPUS PETITION** |
| v. ) | |
| ) | |
| KENNETH CLARK, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner Brandon Armitage, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). Petitioner claims, among other things, that his constitutional rights were violated because the jury was allowed to convict him on either of two theories for burglary, where one of the theories did not meet the requisites of the burglary statute. The Petition was referred to United States Magistrate Judge Louisa S. Porter for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(d).

The Magistrate Judge issued a Report and Recommendation, recommending the Petition be granted. Respondent objected. For the reasons which follow, the Report and Recommendation is adopted in part and rejected in part. The Petition is **DENIED**.

In reviewing a magistrate judge's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made

by the magistrate judge." 28 U.S.C. § 636(b)(1). Under this statute, "the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise.*" *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*) (emphasis in original); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz. 2003) (applying *Reyna-Tapia* to habeas review).

The Petition alleges two claims. The first claim is that Petitioner was denied his constitutional rights when the state appellate court failed to address his second claim, that the jury was allowed to convict him on two alternative theories of burglary, when only one of the theories was legally sufficient for conviction. The Magistrate Judge recommended denying the first claim, and Petitioner did not object. When no objections are filed, the *de novo* review is waived. Section 636(b)(1) does not require review by the district court under a lesser standard. *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). In the absence of objections, the portion of the Report and Recommendation  recommending denial of the first claim is adopted. Respondent objects to the recommendation to grant the second claim. Upon performing the requisite *de novo* review, Respondent's objections are sustained.

Petitioner was tried in state court on seven charges, burglary of an inhabited dwelling in January and September 2003, possession of a firearm by a felon on two separate occasions, possession of ammunition by a person prohibited from possessing a firearm, discharge of a firearm in a grossly negligent manner, and failure to appear by a person released from custody on bail. After a jury trial, he was convicted on five of the counts, including the September 2003 burglary, which is at issue before this court. Petitioner is currently serving a prison sentence based on this conviction.

At trial, the prosecution argued that Petitioner should be found guilty of the September 2003 burglary because he was found in the victim's garage, inside the victim's car while trying to remove the car stereo from the dash board. The prosecution maintained that Petitioner entered the victim's house with the intent to steal either the car or the car stereo. Petitioner's defense was that he did not have the requisite intent to steal because he was under the influence of methamphetamine and did not know that he was removing the stereo from the car's dashboard

when he was arrested.  On review in state court and in his Petition herein, Petitioner argued that based on the instructions given to the jury with respect to the September 2003 burglary and the answers to the jury's questions during deliberations, the state court allowed the jury to convict him based on two alternative theories, either the intent to steal or possession of methamphetamine.  The California Court of Appeal determined that there was sufficient evidence presented at trial to support a burglary conviction based on intent to steal.  (*See* Lodg. Exh. 9 at 8-10.)  Petitioner does not challenge this determination in his Petition.  On the other hand, it is undisputed that intent to possess methamphetamine is insufficient to support a conviction.  (*See* Objection to the Magistrate Judge's Report and Recommendation Granting Petition for Writ of Habeas Corpus ("Objection") at 1.)

The jury instruction for the September 2003 burglary count stated in full:

> Defendant is accused in Count Six of having committed the crime of burglary, a violation of section 459 of the Penal Code.[]
>
> Every person who enters any building with the specific intent to steal, take and carry away the personal property of another of any value and with the further specific intent to deprive the owner permanently of that property or with the specific intent to commit any felony, is guilty of the crime of burglary in violation of Penal Code section 459.
>
> It does not matter whether the intent with which the entry was made was thereafter carried out.
>
> In order to prove this crime, each of the following elements must be proved:
> 1.   A person entered a building; and
> 2.   At the time of the entry, that person had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property.

(Notice of Lodgment ("Lodg.") Exh. 1 at 99.)  As noted on review in state court, this instruction was legally correct.  (*Id*. Exh. 9 at 11.)  This determination is not challenged in this proceeding.

After commencing deliberations, the jury submitted a question to the court:

> In count 6 in the crime of burglary.  Does the specific intent to commit a felony have to be a specific intent to commit a theft, or could it be a specific intent to commit any other felony.  (For example possession of illegal substance, (meth.) [?]

(Lodg. Exh. 9 at 10.)  The court conferred with counsel and provided the jury with a written response, "The theory advanced by the District Attorney is that the Defendant entered an inhabited dwelling house with the specific intent to steal, not to commit another crime."  (*Id*.)

Shortly thereafter, the jury submitted another question:

> Are we limited to considering only the theory advanced by the District Attorney or does the law allow us to take into consideration evidence given by the defendant[']s own testimony. [¶] We are specifically confused by [page] 47 of the jury instructions. Paragraph 2- line 5 seems inconsistent with the 4th paragraph.

(Lodg. Exh. 9 at 10-11.)

Page 47 is the jury instruction for the September 2003 burglary, which is quoted in its entirety above. The question refers to the language in paragraph 2 of the instruction, which provides that "specific intent to commit any felony" can be a basis for conviction, and paragraph 4, which is narrower, because is references only "specific intent to steal and take away someone else's property, and inten[t] to deprive the owner permanently of that property."

The court's response to the jury's question was, "The accurate definition of burglary is set forth on [page] 47 of your jury instructions." (Lodg. Exh. 9 at 11.) Shortly thereafter, the jury returned a verdict, convicting Petitioner on several counts, including September 2003 burglary.

During sentencing, in response to the defense counsel's concern that the jury may have based the conviction on a legally insufficient basis, the prosecutor replied:

> For the record, I also spoke to the jurors, and while they did discuss the methamphetamine issue, they also assured us that they would have found, and most likely did find, depending on which juror you speak to, that he entered with the intent to commit theft on the second burglary.

(Lodg. Exh. 2 at 431.)

Respondent objected to the Magistrate Judge's reliance on the prosecutor's statement in support of the recommendation to grant the Petition. (*Cf.* R&R at 12,18 & Objection at 11.) The Objection is based in part on Federal Rule of Evidence 606(b), which, with exceptions not pertinent here, precludes consideration of evidence of juror statements regarding the jury's deliberative process. This rule applies in federal habeas proceedings. *See Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000). Accordingly, the prosecutor's statement about the information he received from the jurors about their deliberative process cannot be used to attack the validity of the jury verdict and should not have been considered.

It is undisputed that the jury instructions correctly stated the elements of burglary,

although it is apparent from the record that the trial court's answers to the jury questions were not particularly helpful in addressing the point which confused the jurors. Nevertheless, the California Court of Appeal rejected Petitioner's argument that in light of the instruction and the jurors' confusion, the jury was allowed to convict him based on a legally insufficient theory of burglary:

> Armitage also faults the trial court for what he characterizes as essentially giving its imprimatur to convicting him on the erroneous theory that he entered the garage with the specific intent to commit the crime of being under the influence of methamphetamine. The criticism is unfounded.
>
> . . . [¶] . . . There was nothing erroneous about the instruction for this burglary count or the court's responses to the jury's questions. Both the instruction and the court's responses to the jury's questions properly informed the jurors that in order to convict Armitage of burglarizing the Tuiteses' garage, they had to find he entered the garage with the specific intent to steal. We disagree with Armitage's argument that the court implicitly told the jury it could convict him of burglary on any theory other than theft being the target or underlying offense.
>
> It is pure speculation on Armitage's part to suggest the jury relied on possession of methamphetamine as the target offense for this burglary count. The jury notes merely indicate that at two different points of time, at least one juror was unclear as to the target offense. Beyond this, Armitage's suggestion that the jury convicted him of burglary on the basis that he had the specific intent to be under the influence of methamphetamine is unsupported. . . .

(Lodg. Exh. 9 at 10, 11-12.)

The question presented by the Petition is whether this state court determination "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This is a "highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct.1388, 1398 (2011). A petitioner "can satisfy the unreasonable application prong of § 2254(d)(1) only by showing that there was no reasonable basis for the [state court] decision." *Id*. at 1402 (internal quotation marks and citation omitted). The petitioner carries the burden of proof to meet this standard. *Id*. at 1398. The question, therefore, "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

The pertinent clearly established federal law is summarized in *Middleton v. McNeil*:

> In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process. A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

541 U.S. 433, 437 (2004) (internal ellipsis, brackets, quotation marks and citations omitted).

In *Weeks v. Angelone* this law was applied to facts similar to those presented in the Petition. *See* 528 U.S. 225, 232, 233 (2000). In the penalty phase of a capital case, the jury was given instructions which were legally correct. *Id*. at 231. Nevertheless, the jurors were confused whether they had to issue capital punishment when they made certain findings, or were at liberty to decide to issue a lesser punishment. *Id*. at 229 & n.1. As in this case, in response to a question from the jury indicating that the jurors were confused, the court directed the jury to the pertinent and legally correct jury instruction. *See id*. at 229. According to the instruction, the jury was at liberty to issue a lesser punishment notwithstanding its factual findings. Nevertheless, the jury later returned with the capital punishment. *Id*. at 230. The court held:

> Given that petitioner's jury was adequately instructed, and given that the trial judge responded to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, the question becomes whether the Constitution requires anything more. We hold that it does not.

*Id*. at 234. The holding was based on the presumption that a "jury is presumed to follow its instructions" and "understand the judge's answer to its question," and that the jury did not have any additional questions after the judge's answer directing it to the pertinent instruction. *Id*. "To presume otherwise would require reversal every time a jury inquires about a matter of constitutional significance, regardless of the judge's answer." *Id*.

The court further bolstered its holding based on "several empirical factors" (each juror's affirmation in open court that he or she considered the constitutionally required evidence, the length of deliberations after the judge answered the jury's last question, the fact that the jury did not ask any follow-up questions, and the defense counsel's closing argument, which explained the jury's discretion in deciding on the punishment). *Id*. at 234-36. The court found that even if

petitioner may have demonstrated a possibility that the jury applied the instruction in an unconstitutional manner, the record fell short of reasonable likelihood required to establish a constitutional violation. *Id*. at 236.

In the Report and Recommendation, the Magistrate Judge carefully distinguished the "empirical factors" in *Weeks* from the record in this case. (Report and Recommendation ("R&R") at 17-18.) Based on this analysis, she found that the state court's determination involved an unreasonable application of federal law and recommended granting the Petition.[1]

Subsequently, in *Harrington v. Richter* the Supreme Court amplified the deferential nature of habeas review. "Under § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." 562 U.S. __, 131 S. Ct. 770, 786 (2011). Authority to issue habeas relief is limited to "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id*. "Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1862 (2010). "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786.

---

[1] The Report and Recommendation relies on *Griffin v. United States*, 502 U.S. 46 (1991), for the proposition that simply pointing the jurors to the jury instruction was insufficient because "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . .." (R&R at 17, quoting *Griffin*, 502 U.S. at 59.) *Griffin* held that, in a federal prosecution, a general guilty verdict need not be set aside although the jury was instructed on two theories of conviction, only one of which was supported by sufficient evidence, and there was doubt as to which theory the jury relied upon for the guilty verdict. 502 U.S. at 48, 60; *see also id*. at 47. The passage quoted in the Report and Recommendation was not *Griffin's* holding. *Griffin* did not address Petitioner's argument in this case, that the jury was allowed to base a guilty verdict on a theory which was contrary to law. The phrase "clearly established Federal law as determined by the Supreme Court of the United States," as stated in the habeas statute, refers to the holdings of Supreme Court cases. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Habeas relief in this case therefore cannot be based on *Griffin*. Furthermore, unlike in *Griffin*, the jury in Petitioner's case was not instructed on two theories of the September 2003 burglary, but only one – intent to steal, which is undisputed to be a legally sufficient theory. (*See* Lodg. Exh. 1 at 99.)

If this court were sitting on direct review, it would have good reasons to overturn the California Court of Appeals decision. Even Respondent concedes that the state court decision "may be debatable." (Objection at 1-2.) The jury questions clearly reflect the jury's confusion, and the trial judge's final answer was evasive and unhelpful. Rather than directing the jury to the entirety of the instruction, which was the source of the confusion, the judge easily could have directed them to paragraph 4 of the instruction, which would have unambiguously answered the question. (*Cf.* Lodg. Exh. 1 at 99 (instruction); Exh. 9 at 10-11 (question and answer).) Examining the state court record *de novo*, this court could easily find that it was reasonably likely that the jury applied the challenged instruction so as to base the September 2003 burglary conviction on possession of methamphetamine, a legally insufficient ground, rather than intent to steal.

This court, however, does not sit on direct review of state court decisions. Federal habeas review is "highly deferential" and must give the state court the benefit of the doubt. *Cullen*, 131 S. Ct. at 1398. Given the holding of *Weeks* and the similarity of the record in this case to the facts of *Weeks*, this court cannot conclude that there was "no reasonable basis for the [state court] decision," *see Cullen*, 131 S. Ct. at 1402, or that no fairminded jurist could agree with the state court, *see Harrington*, 131 S. Ct. 786-77.

Accordingly, the Report and Recommendation is adopted in part and rejected in part. The Petition is **DENIED**. Certificate of appealability is **DENIED**.

**IT IS SO ORDERED**.

DATED: April 25, 2011

M. James Lorenz
United States District Court Judge

COPY TO:

HON. LOUISA S. PORTER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL